IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


MARCO HERNANDEZ ZEPEDA,

      Petitioner,

vs.                                                No. CIV 11-909 MCA/LFG

RAY TERRY, WARDEN,

      Respondent.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Petitioner Marco Hernandez Zepeda's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1], filed October 11, 2011. On November 17, 2011, the United States filed its Answer, in which it moved to dismiss the petition either as premature or for failure to state a claim on which relief can be granted. [Doc. 7.] Mr. Zepeda filed a Response on December 2, 2011, [Doc. 9], and the United States filed a Reply on December 7, 2011 [Doc. 10]. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court recommends granting the United States's motion to dismiss.

---

[1] Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the 14-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed. *See, e.g.*, Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).

**I.     BACKGROUND**

The petitioner in this matter, Marco Hernandez Zepeda ("Mr. Zepeda") is a native and citizen of Honduras who first entered the United States in 1999. [Doc. 1, at 4.] In 2010, the Department of Homeland Security ("DHS") charged Mr. Zepeda with entry without inspection and a crime involving moral turpitude. [Doc. 1, Immigration Judge's ("IJ") Written Decision and Order of the Immigration Court (Written Dec.), at 1.] On March 10, 2011, DHS issued a Notice to Appear charging Mr. Zepeda with removability on grounds of (1) his illegal entry; and (2) a prior felony conviction for grand theft in the State of California. [Id.] Mr. Zepeda claims to have been in ICE custody since March 16, 2011. [Doc. 1, at 4.]

In about July 2011, Mr. Zepeda applied for asylum, withholding of removal, and protection under the Convention Against Torture. [Doc. 1; attached I-589 form, at 5.] Mr. Zepeda feared torture by Honduran gang members who Mr. Zepeda insisted had beaten him in Honduras when he resisted their attempts to recruit him. [Doc. 1; Written Dec., at 5.] In a written decision issued September 19, 2011, the IJ, sitting in El Paso, Texas,[2] found Mr. Zepeda removable on the two charges listed above and denied his application for asylum. [Id., at 14-17.] The IJ ordered that Mr. Zepeda be removed to Germany, or, in the alternative to Honduras. [Id., at 18.] On September 25, 2011, Mr. Zepeda, who currently is being held at the Otero County Processing Center in Chaparral, New Mexico, appealed the IJ's decision. [Doc. 1, at 2, 4.] That appeal is still pending as of the date of the government's November 17, 2011 response. [Doc. 7.]

---

[2]The IJ sitting in El Paso generally applied Fifth Circuit law in his September 19, 2011 written decision. [Doc. 1, Written Dec.]

**II.    HABEAS PETITION**

On October 11, 2011, Mr. Zepeda filed the present petition for a writ of habeas corpus. [Doc. 1.] Mr. Zepeda concedes that no final order of removal has yet been entered, but claims to have been held in confinement for too long a period and also asks "to be released on immigration parole and/or supervised release until ICE decides [his] legal status. . . ." [Id., at 6; Doc. 9, at 2.] Mr. Zepeda, who was earlier incarcerated in Bakersfield, California before initiation of removal proceedings, further argues that venue in this district is improper because he was "abducted from the territorial bound[a]ries of the 9th Circuit," where he believes he would have received a more favorable decision vis-à-vis his removability. [Doc. 1, at 3-4.]

In its Response, the United States moves to dismiss Mr. Zepeda's petition as premature or for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). [Doc. 7, at 1.] The United States confirmed that, as of November 17, 2001, Mr. Zepeda did not yet have a final removal order and that his appeal was still pending. [Id., at 2.] The United States argues, *inter alia*, that Mr. Zepeda is an alien who can be detained pending his removal proceedings, in accordance with 8 U.S.C. § 1226 and that Zadvydas v. Davis is inapplicable in determining the reasonableness of Mr. Zepeda's length of detention. In addition, the United States contends that this Court lacks jurisdiction to review ICE's denial of parole or bond, as well as its decision to detain Mr. Zepeda in New Mexico. [Doc. 10, at 1-2.]

**III.   ANALYSIS**

    **A.    Length of Mr. Zepeda's Detention**

Mr. Zepeda attempts to invoke the protections of Zadvydas v. Davis, 533 U.S. 678 (2001) and Clark v. Martinez, 543 U.S. 371 (2005), contending that the length of his ICE custody is presumptively unreasonable. In support, Mr. Zepeda focuses on the six months that elapsed between

3

March 16, 2011, the day he was taken into ICE custody, and September 19, 2011, the day the IJ issued a written order as to Mr. Zepeda's removability. In Zadvydas and Clark the United States Supreme Court held that, for both resident and inadmissible aliens, the presumptive period during which the detention is reasonably necessary to effectuate removal pursuant to 8 U.S.C. § 1231, is six months. *See* Zadvydas, 533 U.S. at 701; Clark, 543 U.S. at 378.

Section 1231, however, generally does not become applicable until a final removal order is in place, thereby triggering the computation of the removal period. *See* Codina v. Chertoff, 283 F. App'x 432 (8th Cir. July 24, 2008) (petitioner was not yet under a final order of removal, and thus, no violation of Zadvydas could have occurred), *cert. denied,* 555 U.S. 1113 (2009); Smith v. Tsoukaris, 2011 WL 6002464, at *2 (D. N.J. Nov. 30, 2011) (unpublished) (the six-month "presumptively reasonable period of detention," as set out in Zadvydas begins to run anew every time the alien's order of removal becomes "administratively final"); Jaime v. Kane, 2008 WL 2186377, at *3 (D. Ariz. May 23, 2008) (unpublished) (Section 1231(a) does not apply until the removal period has commenced).

In accordance with 8 U.S.C. § 1231(a)(1)(B), the removal period begins on the latest of the following:

> (I) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

The Code of Federal Regulations provides, in pertinent part, that an IJ's order of removal "shall become final . . . (1) [u]pon dismissal of an appeal by the Board of Immigration Appeals; [or] (b) [u]pon waiver of appeal by the respondent. . . ." 8 C.F.R. § 1241.1. Moreover, "[i]t is clear that an

4

alien may not challenge a removal determination through collateral means prior to the entry of a final removal decision. . . ." De La Teja v. United States, 321 F.3d 1357, 1365 (11th Cir. 2003).

In this case, Mr. Zepeda does not dispute that his appeal currently is pending and active and, as a result of the ongoing appeals process, no final order of removal yet exists. *See, e.g.,* 8 C.F.R. § 1241.1 (removal order becomes final, *inter alia*, upon waiver of appeal by alien or dismissal of appeal by BIA). Indeed, Mr. Zepeda confirms that he "just appealed to 'BIA' and [does not] know how long will it take for [his] deportation or removal [to] become final. . . ." [Doc. 1, at 5.] In the space provided on his boilerplate habeas petition for the date his removal became final, Mr. Zepeda wrote, "not yet." [Id.] Mr. Zepeda also clearly states that he is "not waiving [his] right to appeal to (BIA). . . ." [Id.] Accordingly, because Mr. Zepeda does not have a final removal order, he is unable to invoke the protections of Zadvydas and Clark, as the six-month removal period has not started to run. Thus, any claim raised under Zadvydas is premature.

### B. Mr. Zepeda's Request for Release

Mr. Zepeda also "challenges the procedures for parole and/or supervised release [and] complains that he should be entitled to some kind of alternative release from detention . . . ." [Doc. 9, at 2.]

Section 1226 of Title 8 of the United States Code governs the authority of the Secretary of the Department of Homeland Security to arrest and detain "an alien . . . pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Further, the Secretary's "discretionary judgment regarding the application of [8 U.S.C. § 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).

Notwithstanding his assertion that he is "challeng[ing] the procedures for parole and/or supervised release" [Doc. 9 at 2], Mr. Zepeda identifies no actual practice or procedure to which he takes issue. Therefore, the Court determines that Mr. Zepeda's objection is to the Secretary's discretionary decision to deny him release or parole. In support of this determination, the Court notes that, other than simply "referring to 8 C.F.R. [§] 241.13(b)(2)(ii)[,]" Mr. Zepeda fails to specify the nature of his alleged challenge to any procedures set forth in that section.[3] However, absent some sort of procedural or constitutional challenge, this Court lacks jurisdiction to review a decision of the secretary to deny release or parole. *Compare* Demore v. Kim, 538 U.S. 510, 516-517 (2003) (habeas review not foreclosed where detainee challenges statutory framework that permits his detention without bail); Sierra v. I.N.S., 258 F.3d 1213, 1217-18 (10th Cir.) (habeas court had jurisdiction to review illegal immigrant's challenges to specific procedures used to withdraw his parole, although court affirmed denial of his claim of due process violation), *cert. denied,* 534 U.S. 1071 (2001).

Mr. Zepeda's allegations regarding some sort of "alternative release from detention," to which he believes he is entitled are vague and unspecified. Thus, the Court determines he fails to state a claim under Fed. R. Civ. P. 12(b)(6), and that, therefore, this claim should be dismissed.

---

[3] Because 8 C.F.R. § 241.13 "establishes special review procedures for those aliens who are[, *inter alia*,] subject to a final order of removal[,]" it is thus far inapplicable to Mr. Zepeda. The subsection to which Mr. Zepeda refers in his petition and response provides:

> The HQPDU [Headquarters Post–Order Detention Unit] has no obligation to release an alien under this section until the HQPDU has had the opportunity during a six-month period, dating from the beginning of the removal period (whenever that period begins and unless that period is extended as provided in section 241(a)(1) of the Act), to make its determination as to whether there is a significant likelihood of removal in the reasonably foreseeable future.

8 C.F.R. § 241.13(b)(2)(ii).

C.   **Mr. Zepeda's Challenge to the Transfer**

Mr. Zepeda contends that venue in the District of New Mexico is improper, and that the only reason he was transferred out of California is that Ninth Circuit authority is more favorable to his position on the propriety of release. [Doc. 9, at 3.] He asserts that the Ninth Circuit has held that the offense of grand theft, which is one of two bases on which the IJ sustained his removability, "is not categorically an aggravated felony for immigration purposes." [Id., at 4.] Mr. Zepeda points to a footnote in the IJ's decision in which the IJ cited two Ninth Circuit cases supporting Mr. Zepeda's position, but nevertheless explained that "the law of the Ninth Circuit does not govern this case and the Court specifically declines to follow these Ninth circuit cases." [Doc. 1, Written Dec., at 26 n.2.] The IJ was sitting in El Paso, Texas, and generally followed Fifth Circuit authority in addressing the issues raised by Mr. Zepeda. [Doc. 1, Written Dec., at 1.]

The government argues that "ICE's decision to detain [Mr. Zepeda] in New Mexico is not subject to [this Court's] judicial review[,]" and cites 8 U.S.C. § 1252. [Doc. 10, at 2.] The pertinent statutory section provides, in part, –

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
> . . .
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

With respect to where an illegal immigrant may be detained, 8 U.S.C. § 1231(g)(1) provides in pertinent part that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." Thus, it is the government's position that ICE's discretionary decision to transfer Mr. Zepeda from one facility to another cannot be reviewed by this court. [Doc. 10, at 2-3.]

On May 11, 2005, Congress enacted the REAL ID Act ("the Act"), "which transformed the legal framework for disposing of habeas petitions challenging orders of removal." Moreno-Bravo v. Gonzales, 463 F.3d 253, 256 (2d Cir. 2006). Provisions of the Act withdrew federal courts' jurisdiction to review final orders of removal through the habeas statute, 28 U.S.C. § 2241. Id. The Act mandated that a petition for review be filed with the appropriate court of appeals in accordance with 8 U.S.C. § 1252. Id. (citation omitted). The Act did, however, allow judicial review by federal district courts of "constitutional claims or questions of law." Id. at 259.

The United States Supreme Court described a provision of 8 U.S.C. § 1252 as a "general jurisdictional limitation" and as "an unmistakable 'zipper' clause." Aguilar v. U.S. Immig. and Customs Enforcement, 510 F.3d 1, 9 (1st Cir. 2007) (internal citation omitted). The Aguilar court explained that Congress's purpose in enacting § 1252(g) ("Consolidation of questions for judicial review") was to "consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeal." Id. (citation omitted) (emphasis in original).

In the present case, the government relies on Van Dinh v. Reno, 197 F.3d 427, 435 (10th Cir. 1999), for the proposition that § 1252(a)(2)(B)(ii) "precludes judicial review" of ICE's discretionary decision to transfer Mr. Zepeda from one facility to another. [Doc. 10, at 3.] In Van Dinh, a permanent resident alien and others facing possible transfer between detention centers brought a

Bivens class action lawsuit.  Construing 8 U.S.C. § 1252(a)(2)(B)(ii), together with 8 U.S.C. § 1231(g)(1),  the Tenth Circuit concluded that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a Bivens class action suit."  Vin Dinh, 197 F.3d at 433.  However, the circuit "emphasize[d] . . . that [its] holding . . . ha[d] no application to constitutional habeas claims brought pursuant to 28 U.S.C. § 2241."  Id. at 435.

The First Circuit Court of Appeals described the Tenth Circuit's holding in Vin Dinh, *e.g.,* "[that] section 1252(a)(2)(B)(ii) pretermits judicial review of the Attorney General's decision to transfer detainees" as the minority view, which the First Circuit rejected.  Aguilar, 510 F.3d at 20.  The Aguilar court held that § 1252(a)(2)(B)(ii) did "not strip the district courts of jurisdiction over substantive due process claims that are collateral to removal proceedings *when those claims challenge decisions about the detention and transfer of aliens on family integrity grounds.*"  Id. at 21 (emphasis added).  In other words, the First Circuit's holding is very narrow.

In Aguilar, the plaintiffs alleged that –

> their immediate detention, the subsequent string of transfers (many of them to distant climes), and ICE's inadequate efforts either to notify or to work with social service agencies disrupted family units. That alleged disruption forms the centerpiece of their substantive due process claims.

Id. at 19.  The First Circuit concluded this type of "right to family integrity" claim was only "marginally related to removal," and not one that the immigration court would ordinarily handle. Id.  The Court further reasoned that this was not like a case where the illegal immigrant attempted to "wedge a family integrity claim into a removal proceeding."  Id. (citation omitted).  The latter type of family integrity case presumably would implicate the removal proceedings sufficient to preclude habeas review by the federal district court.  *See id.* at 9 (§ 1252 aims to consolidate "all

9

questions of law and fact that 'arise from' either an 'action' or a 'proceeding' brought in connection with the removal of an alien.")  But, in Aguilar, the First Circuit essentially held that the plaintiffs' family integrity claim had only a remote or attenuated connection to the removal proceeding.  *See id.* at 10-11.

The facts and claims in Aguilar are significantly distinguishable from Mr. Zepeda's claim that he was improperly "kidnapped" from California and detained in a state[4] where the law was less favorable to him with respect to his prior conviction.  First, Mr. Zepeda's claim concerning his transfer (found in his subsequent "response" brief) does not present a constitutional claim equal or similar to the substantive due process claim asserted in Aguilar.

Second, while the Aguilar court deemed the petitioners' family integrity claims to be collateral or even independent of the removal proceedings, that is not true here.  Mr. Zepeda's assertions concerning venue include the argument that had Ninth Circuit law applied, he might have had a better chance to be released or paroled "since he wasn't deportable on ground[s] of [a] crime involving moral turpitude[,]" *i.e.,* the grand theft conviction under California law. [Doc. 9, at 3.] He further contends that under Ninth Circuit law, his conviction for "C.P.C. 487 Grand Theft is not categorically an aggravated felony for immigration purposes. . . ." [Id., at 4.] Thus, the Court finds, that unlike the facts in Aguilar, Mr. Zepeda's claims concerning his transfer to New Mexico from California or the application of Fifth Circuit law over Ninth Circuit law cannot be viewed as either independent of, or collateral to, his removal proceedings.  *See* Aguilar, 510 F.3d at 18 (to the extent

---

[4]Because the IJ's Written Decision was issued in El Paso, Texas, and relies upon Fifth Circuit precedent, Mr. Zepeda argues that Fifth Circuit precedent (not Tenth Circuit precedent) is less favorable to him than Ninth Circuit authority. [*See* Doc. 9, at 5.]

that petitioners attempted to raise procedural due process claims regarding the calling of witnesses at removal proceedings, those claims were not collateral to removal proceedings).

Third, under the circumstances of this case, ICE's decision to move Mr. Zepeda from California to New Mexico is exactly the type of discretionary decision this Court does not have jurisdiction to address. In Calla-Collado v. Attorney General, 663 F.3d 680, 685 (3d Cir. 2011), the Third Circuit explained that Congress vested the Department of Homeland Security ("DHS") with the authority to enforce the nation's immigration law. Thus, as part of DHS, ICE "necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another." Id. (citations omitted). "An alien [] does not have the right to be detained where he believes his ability to obtain representation and present evidence would be most effective." Id. (citation omitted).

For the above-stated reasons, the Court concludes that it lacks jurisdiction over Mr. Zepeda's venue/transfer claim that is brought in connection with or that arises from the removal process. Accordingly, the Court recommends it, too, be dismissed. However, Mr. Zepeda, if he has not done so already, may be able to raise this claim before the immigration judge, before the Board of Immigration Appeals, and ultimately before the court of appeals. *See id.*, at 14 (describing how certain claims may be reviewed).

## IV.    **RECOMMENDATIONS**

For the reasons set out above, the Court finds that Mr. Zepeda's claim concerning length of detention is premature and recommends that it be dismissed, without prejudice. The Court further

finds that it has no jurisdiction to entertain the remaining two claims and recommends that they both be dismissed without prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge